UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                                          :
Rembrandt Technologies, LP,
                                                          :
                          Plaintiff,
                                                          :
                    - against -
                                                          :
Adelphia Communications Corporation;
Century-TCI California, LP;                               :
Century-TCI California Communications, LP;                      Case No. 1:07-cv-00214 (WHP)
Century-TCI Distribution Company, LLC;                    :
Century-TCI Holdings, LLC;
Parnassos, LP;                                            :
Parnassos Communications, LP;
Parnassos Distribution Company I, LLC;                    :
Parnassos Distribution Company II, LLC;
Parnassos Holdings, LLC; and                              :
Western NY Cablevision, LP,
                                                          :
                          Defendants.
                                                          :
----------------------------------------------------------x


**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
<u>WITHDRAW THE REFERENCE TO BANKRUPTCY COURT</u>**

Roger Netzer
Thomas Meloro
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000

Attorneys for Defendants and
Reorganized Debtors

## Table of Contents

Table of Contents ............................................................................................................. ii

Table of Cases ................................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

    A.  Parties.....................................................................................................................2

    B.  Rembrandt's Adversary Proceeding and Objection to Confirmation. ..........................4

        1.  Rembrandt Waited More Than Four Years Before Suing. .....................................4

        2.  Rembrandt Engaged In Extensive Discovery In Bankruptcy Court. .......................5

    C.  Rembrandt Asked The Bankruptcy Court To Conduct An Evidentiary Hearing
        On Its Claims Of Infringement And Damages. .............................................................7

ARGUMENT .....................................................................................................................9

    A.  Rembrandt's Tactic in Invoking the Bankruptcy Court's Jurisdiction and then
        Belatedly Seeking Withdrawal Warrants Denial of the Motion. ...............................10

        1.  As Rembrandt Initiated Proceedings On The Patent Issues in Bankruptcy
            Court, Any Withdrawal Motion Should Have Been Filed Immediately. ..............11

        2.  Rembrandt's Four-Month Delay In Filing The Withdrawal Motion Renders
            The Withdrawal Motion Untimely Under Section 157(d). ..................................12

        3.  Both Parties, as Well as the Bankruptcy Court, Have Already Devoted
            Considerable Time and Effort Litigating the Patent Issues in Bankruptcy
            Court. ..............................................................................................................15

    B.  The Adversary Proceeding Does Not Require Substantial And Material
        Consideration Of Non-Bankruptcy Federal Law. .......................................................16

        1.  The Adversary Proceeding Only Requires Routine Application of Patent
            Law Which Does Not Entitle Rembrandt to Mandatory Withdrawal Under
            Section 157(d). ................................................................................................16

        2.  The Authorities Relied on by Rembrandt Do Not Require that the Adversary
            Proceeding's Reference Be Withdrawn. .............................................................19

        3.  Rembrandt Fails to Provide Any Analysis to Satisfy its Burden to
            Demonstrate that Substantial and Material Consideration of Patent Law is
            Necessary to Resolve the Adversary Proceeding....................................................21

3585064

CONCLUSION................................................................................................................23

## Table of Cases

Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.),
    No. 02 Civ. 8495 (GBD), 2003 WL 21297258 (S.D.N.Y. June 4, 2003)..............17, 19, 21

Bianco v. Hoehn (In re Gaston & Snow),
    173 B.R. 302 (S.D.N.Y. 1994)........................................................................................18

Carr v. Mich. Real Estate Ins. Trust (In re Mich. Real Estate Ins. Trust),
    87 B.R. 447 (E.D. Mich. 1988)......................................................................................21

Caterpillar Tractor Co. v. Berco, S.P.A.,
    714 F.2d 1110 (Fed. Cir. 1983).....................................................................................20

Cent. Ill. Sav. & Loan Assoc. v. Rittenberg Co., Ltd. (In re IQ Telecomm., Inc.),
    70 B.R. 742 (N.D. Ill. 1987) .........................................................................................14

Childs v. Gallagher,
    342 B.R. 823 (M.D. Ala. 2006) ....................................................................................16

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991)........................................................................................18

Connolly v. Biderman Indus. U.S.A., Inc.,
    No. 95 Civ. 1791 (RPP), 1996 WL 325575 (S.D.N.Y. June 13, 1996) ...........................10

Davis v. Mahlmann (In re Mahlmann),
    149 B.R. 866 (N.D. Ill. 1993) ...........................................................................11, 12, 16

Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.),
    No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003).....................................18, 19

Grunewald v. Power Swing Partners (In re Power Swing Partners),
    9 B.R. 512 (Bankr. S.D. Cal. 1980) ..............................................................................17

In re Giorgio,
    50 B.R. 327 (D. R.I. 1985).............................................................................................10

In re Adelphia Bus. Solutions, Inc.,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) ..........................................................................15

In re Cambridge Biotech Corp.,
    186 F.3d 1356 (Fed. Cir. 1999).....................................................................................13

In re Great Northern Paper, Inc.,
    323 B.R. 7 (D. Me. 2005) ..............................................................................................13

In re Holcomb Health Care Servs., LLC,
    329 B.R. 622 (Bankr. M.D. Tenn. 2004) ......................................................................16

In re Loral Space & Commc'ns,
        No. 04 Civ. 04547, 2004 WL 1586466 (S.D.N.Y. July 14, 2004) ...................................11

In re Patient Educ. Media, Inc.,
        210 B.R. 237 (Bankr. S.D.N.Y. 1997) ............................................................................17

In re Recoton Corp.,
        No. 04 Civ. 2466, 2004 WL 1497570 (S.D.N.Y. July 1, 2004) .......................................18

In re Sec. Group,
        89 B.R. 192 (M.D. Fla. 1988) .........................................................................................14

In re Stavriotis,
        111 B.R. 154 (N.D. Ill. 1990) .........................................................................................14

In re Texaco Inc.,
        84 B.R. 911 (S.D.N.Y. 1988) ..........................................................................................18

In re Vicars Ins. Agency, Inc.,
        96 F.3d 949 (7th Cir. 1996) ............................................................................................21

In re White Motor Corp.,
        42 B.R. 693 (N.D. Ohio 1984) ...................................................................................18, 19

Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp.
        (In re Cambridge Biotech Corp.), 186 B.R. 9 (Bankr. D. Mass. 1995), aff'd, 212 B.R.
        10 (D. Mass. 1997), aff'd, 186 F.3d 1356 (Fed. Cir. 1999)..............................................17

Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.),
        182 B.R. 379 (S.D.N.Y. 1995).........................................................................................17

Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.),
        No. 95 Civ. 2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) ............................10

Laine v. Gross,
        128 B.R. 588 (D. Me. 1991) .......................................................................................12, 14

Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist.,
        158 B.R. 574 (S.D.N.Y. 1993).....................................................................................11, 13

Markman v. Westview Instr., Inc.,
        517 U.S. 370 (1996)........................................................................................................20

McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.),
        160 B.R. 502 (S.D.N.Y. 1993).........................................................................................20

O'Connell v. Terranova (In re Adelphi Inst., Inc.),
        112 B.R. 534 (S.D.N.Y. 1990)..........................................................................18, 19, 20, 22

Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp.
    (In re: FMI Forwarding Co., Inc.),
    No. 00 B 41815 (CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ........................... 10, 13

Rickel & Assocs., Inc. v. Smith,
    No. 03 Civ. 7236, 2003 WL 23021972 (S.D.N.Y. Dec. 24, 2003) .................................. 11

Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.),
    99 B.R. 536 (S.D.N.Y. 1989) ................................................................................ 17, 20

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) ................................................................................ 18, 20

Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.),
    No. 01 Civ. 0165 (WHP), 2002 WL 243779 (S.D.N.Y. Feb. 20, 2002) ..................... 11, 19

Sunbeam Prods, Inc. v. Wing Shing Prods. (BVI) Ltd. (In re AI Realty Mktg. of N.Y., Inc.),
    293 B.R. 586 (Bankr. S.D.N.Y. 2003), aff'd in part and rev'd in part on other
    grounds, 311 B.R. 378 (S.D.N.Y. 2004), aff'd, 153 F.App'x 703 (Fed. Cir. 2005),
    cert. denied, 126 S. Ct. 1085 (2006) .................................................................... 17, 19

Vitronics Corp. v. Conceptronic, Inc.,
    90 F.3d 1576 (Fed. Cir. 1996) ....................................................................................... 20

United States v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    63 B.R. 600 (S.D.N.Y. 1986) ......................................................................................... 22

United States v. Kaplan,
    146 B.R. 500 (D. Mass. 1992) ................................................................................. 10, 12

Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,
    520 U.S. 17 (1997) ........................................................................................................ 20

Wolverine World Wide, Inc. v. Nike, Inc.,
    38 F.3d 1192 (Fed. Cir. 1994) ....................................................................................... 20

PRELIMINARY STATEMENT

Defendants and Reorganized Debtors Adelphia Communications Corporation ("Adelphia"); Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP (collectively, "Debtor Defendants") submit this memorandum of law in opposition to Plaintiff Rembrandt Technologies, LP's ("Rembrandt") Motion to Withdraw the Reference to the Bankruptcy Court and its Memorandum of Law in Support ("Withdrawal Motion").

Plaintiff Rembrandt is not entitled to mandatory withdrawal of the reference of the adversary proceeding that it commenced September 13, 2006 ("Adversary Proceeding"), for two equal and sufficient reasons.  First, Rembrandt's pro-active invocation of the bankruptcy court's jurisdiction and its failure to timely seek withdrawal of the reference, violated the mandatory withdrawal statute.  Second, straightforward application of non-bankruptcy law is all that is required to decide this case.  By way of background, Rembrandt waited until the eve of confirmation, fifty-one months after the Debtor Defendants first filed for bankruptcy protection, to file its administrative expense claim and the complaint in the Adversary Proceeding (the "Complaint").  Further, Rembrandt then litigated in bankruptcy court for an additional four months before reversing course and filing its Withdrawal Motion.

Rembrandt is looking to have its cake and eat it too -- after choosing to invoke the benefits of the Debtor Defendants' bankruptcy proceeding by filing the Adversary Proceeding and an administrative expense claim on identical facts, Rembrandt was able to obtain a special benefit that almost none of the other administrative claimants received -- a special reserve set up in Rembrandt's own name for any potential recovery in the Adversary Proceeding.  Now, having

garnered all of the benefit it was seeking from the bankruptcy court, Rembrandt is attempting to

forum shop by withdrawing the reference to the bankruptcy court on the sole ground that the case

involves patent law, which it was well aware of even before filing the Complaint.

Second, Rembrandt does not offer any analysis in its Withdrawal Motion as to

why this case requires anything other than the simple and straightforward application of

established patent law.  The import of Rembrandt's argument is that all patent infringement cases

must be withdrawn, with no analysis of the underlying claims.  Supporting such an argument

would eviscerate the powers of the bankruptcy court to ever hear a patent case regardless of the

circumstances.  This is simply not in accord with 28 U.S.C. section 157(d) or prevailing

authority.

STATEMENT OF FACTS

A.    Parties

Plaintiff

Plaintiff Rembrandt is an entity that has only one line of "business."  It purports to

be the owner of various patents.  Rembrandt does not design, develop or manufacture cable

modem technology.  Rembrandt is neither a participant in the cable modem industry, nor a

provider of high-speed internet ("HSI") services.  It has no customers or clients.  Rembrandt

simply buys third-party rights to patents to technology it never intends to use in order to sue

companies that actually make or use products, and service customers.  The sole basis of

Rembrandt's "business" is to seek to generate revenue by claims of patent infringement.

U.S. Patent Nos. 5,710,761, 5,778,234, 6,131,159, and 6,950,444 (the "patents-in-

suit") were originally owned by Paradyne Corporation, a manufacturer of DSL modems.  The

'761, '234, and '159 patents were assigned to Rembrandt on December 20, 2004, in connection

with a sale by Paradyne of a package of patents. Zhone Technologies, Inc., Paradyne's successor, subsequently agreed to assign another package of patents, including the '444 patent.

<u>Defendants</u>

Adelphia is a Delaware corporation and the ultimate corporate parent of each of the other Debtor Defendants and of the other debtors (collectively, "Debtors") in Adelphia's chapter 11 case. The Debtors owned and operated cable systems.

The Debtors combined constituted the fifth largest operator of cable television systems in the United States. Prior to the sale of substantially all of their assets on July 31, 2006, Adelphia and its affiliates served customers in 31 states by supplying analog and digital video services, HSI access and other advanced services over their broadband networks. At no time did the Debtor Defendants (or any affiliate) design or manufacture the cable modems used by their customers to access HSI services. Rather, the Debtor Defendants simply purchased the cable modems from unrelated third-party vendors, and in turn leased or sold these devices to their customers.

On June 25, 2002, the Debtor Defendants filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. On October 6, 2005, certain additional Debtor Defendants also filed voluntary petitions to reorganize under Chapter 11.

On April 20, 2005, Adelphia entered into definitive sale agreements with Time Warner NY Cable LLC ("Time Warner") and Comcast Corporation ("Comcast" and, together with Time Warner, the "Buyers") pursuant to which the Buyers agreed to purchase substantially all of the Debtors' assets for approximately $12.7 billion in cash and a 16% interest in Time

Warner Cable, Inc., for total consideration valued at such time at approximately $17.6 billion.
On July 31, 2006, Adelphia completed the sale of its assets to the Buyers.

On January 5, 2007, the bankruptcy court entered an order confirming the First
Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and
Certain of its Affiliated Debtors (the "Plan"), dated as of January 3, 2007.  On February 13,
2007, all conditions to consummation of the Plan were satisfied or waived in accordance with the
Plan (the "Effective Date").  Distributions in accordance with the Plan commenced on February
13, 2007.

The bankruptcy court has also established a process for filing and resolving the
claims filed against the Debtors' estates, including establishing bar dates for both pre-petition
and administrative claims.  The ultimate amount of the Debtors' liabilities will be determined
during this claims resolution process, which is already ongoing in the bankruptcy court before
Judge Gerber.

B.    Rembrandt's Adversary Proceeding and Objection to Confirmation.

1.    Rembrandt Waited More Than Four Years Before Suing.

Rembrandt filed the Complaint in the bankruptcy court against the Debtor
Defendants on September 13, 2000.  The Complaint alleges that the Debtor Defendants had been
infringing the patents-in-suit since at least June 2002.

Rembrandt simultaneously filed a proof of claim.  The proof of claim
incorporated the Complaint as the sole and exclusive basis for Rembrandt's claim.  The patents
themselves were attached as exhibits to both filings.  (See Exs. A & B to Decl. of Marc B.
Hankin, Jan. 10, 2007.)

The Debtor Defendants answered the Complaint and counterclaimed on November 27, 2006. Rembrandt replied to the Debtor Defendants' answer and counterclaim on December 15, 2006.

Despite Rembrandt's allegation that the Debtor Defendants have been infringing since June 2002, Rembrandt, Paradyne, and Zhone did not seek any redress from Adelphia at any point before filing the claim for over $130 million. Indeed, they did not provide the Debtor Defendants with any notice of the alleged infringement at any point during the entire period, even though they have presumably known of their claim relating to the patents-in-suit for many years.

The reason for Rembrandt's four year of delay quickly become apparent. On November 22, 2006, Rembrandt filed an objection to the confirmation of the Plan. (A copy of the Objection of Rembrandt Technologies, LP to Confirmation of the Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of its Affiliated Debtors is attached as Ex. E to Cahalan Decl.) Rembrandt objected to confirmation of the Plan unless the Plan was modified to provide for a cash reserve to be used solely to satisfy Rembrandt's administrative claim.

2.     Rembrandt Engaged In Extensive Discovery In Bankruptcy Court.

Rembrandt sent a letter to the Debtor Defendants on October 16, 2006 requesting discovery, "all of it standard in a patent case." (See Ex. A to Decl. of Eilish M. Cahalan dated Mar. 2, 2007 ("Cahalan Decl.").) Rembrandt's discovery requests included 37 document requests, 21 interrogatories, 7 deposition topics, and 9 requests for admission. Rembrandt subsequently served its First Request for the Production of Documents in the Adversary Proceeding on October 20, 2006. (See Cahalan Decl. Ex. B.) Rembrandt sought broad discovery relating to its claims in the Adversary Proceeding of patent infringement and patent

3585064

damages.  In response, Debtor Defendants produced over 13,000 pages of documents.

Rembrandt also sought document production in the Adversary Proceeding by third-party

subpoena to Broadcom Corporation entitled "Subpoena in an Adversary Proceeding," seeking

discovery that it contended was relevant to the issue of infringement.  Specifically, Rembrandt

sought production of the source code for the micro-chips used in some of the accused modems.

    On November 3, 2006, Rembrandt provided the Debtor Defendants with "claim

charts" in which it asserted its contentions of infringement of the patents-in-suit.  Both parties

also retained experts and produced extensive expert reports on the very issue at the heart of the

Adversary Proceeding -- whether the Debtor Defendants infringed the patents-in-suit and the

appropriate damage calculation if such infringement did occur.  On November 13, 2006,

Rembrandt provided the expert report of Dr. Kevin Almeroth on the issue of infringement and

the expert report of Walter Bratic on the issue of damages.  Dr. Almeroth's report referenced the

claim charts that specifically identified Rembrandt's contentions on how each element of the

asserted patent claims was infringed by Adelphia, and set forth his conclusion of patent

infringement.  Mr. Bratic's report opined that Rembrandt was entitled to significantly less than

the $130 million in damages Rembrandt filed its claim for.  Mr. Bratic's report contained an

analysis on the amount of damages Rembrandt contended it was owed based upon application of

the *Georgia-Pacific* factors established in patent law to hypothesize what a reasonable royalty on

Adelphia's revenues would be.

    At the November 14, 2006 pre-trial conference, both parties explained to Judge

Gerber the underlying issues in the case.  Rembrandt's counsel confirmed that the parties had

already begun exchanging fact and expert discovery on the issues of patent infringement and

alleged damages that would be resolved in the Adversary Proceeding:

3585064

> We've also engaged in some expert discovery.  Rembrandt has
> provided to defendants an expert report from a computer scientist
> expert who has analyzed the patents, analyzed the DOCSIS
> standard, and has opined that the DOCSIS standard infringes these
> four patents.  We provided that to the debtors.
>
> We've also provided an expert report from an expert economist
> who has analyzed the revenues that these cable modem services
> have generated for the debtors and has stated a damages claim that
> he alleges -- he opines is the appropriate damages remedy in this
> particular case.

(See Transcript of November 14, 2006 Hearing, 10:23-11:8, attached as Ex. C to Cahalan Decl.)

Although Judge Gerber specifically inquired about coordination of the Adversary

Proceeding with litigations commenced by Rembrandt in other jurisdictions against several

different cable entities, Rembrandt never disclosed its intention to seek to withdraw the reference

of the Adversary Proceeding.[1]  Instead, counsel for Rembrandt implied that the case would

remain before Judge Gerber and indicated that Judge Gerber should simply "coordinate" pre-trial

matters with the Eastern District of Texas.  Rembrandt's counsel stated:

> [The Texas court] has a lot of experience with patent matters.  Not
> to suggest that Your Honor doesn't, but if Your Honor wanted to
> coordinate more closely with the eastern district and sort of follow
> along on pretrial matters with that district in the Time Warner case,
> I think that probably would be advantageous to everyone involved.

(Id. at 13:23-14:10.)

C.    Rembrandt Asked The Bankruptcy Court To Conduct An Evidentiary Hearing On
      Its Claims Of Infringement And Damages.

At Rembrandt's request, Judge Gerber scheduled an estimation hearing for

December 12, 2006, for the purpose of setting a reserve specifically for Rembrandt's claim.  On

November 15, 2006, the parties entered into a stipulation and proposed order for a limited

---

[1] Rembrandt has asserted the patents-in-suit against various cable operators in the District of
Delaware and the Eastern District of Texas.

- 7 -

3585064

discovery schedule for the purposes of the estimation hearing. (A copy of the stipulation is attached as Ex. D to Cahalan Decl.)

The Debtor Defendants subsequently also produced two expert reports on November 22, 2006 -- issued by Dr. Jim Martin on the issue of the alleged infringement and Kathleen Kedrowski on the issue of damages. These reports rebutted the expert reports of Dr. Almeroth and Mr. Bratic and also contained analyses of the patent claims and the *Georgia-Pacific* factors, respectively. The expert reports from both parties were to be the basis for the experts' testimony on the issues of infringement and damages at the estimation hearing to determine what reserve, if any, Rembrandt was entitled to. At no time did Rembrandt raise the concern that Judge Gerber would not be qualified to understand either the testimony and documentary evidence that was to be used at the estimation hearing or the applicable patent law that would need to be applied by Judge Gerber to determine the amount of reserve that Rembrandt should be given.

On the contrary, Rembrandt showed a complete willingness to present testimony and other evidence to Judge Gerber at the estimation hearing on the issues of infringement and damages, which would have required Judge Gerber to (1) understand the patents and the claim language, (2) understand the accused Adelphia services, and (3) determine for purposes of setting a reserve amount whether the claims were infringed by the accused services. Furthermore, the estimation hearing would have also required Judge Gerber to apply the applicable patent law with respect to damages.

On December 8, 2006, on the eve of the estimation hearing, the parties reached a consensual resolution of Rembrandt's objection to confirmation. They agreed to a reserve of $35 million for any potential recovery for Rembrandt's claim, and the estimation hearing was

canceled.  This $35 million reserve was an additional significant downward departure from the

allegation of damages in Rembrant's expert report and little more than one-fourth of the $130

million that Rembrandt initially claimed.  The parties agreed in the stipulation that the

establishment of a reserve was not an admission of liability by the Debtor Defendants or an

admission as to the ultimate amount of damages correctly attributable to Rembrandt's claim.  (A

copy of the Stipulated Order Establishing Separate Reserve for Rembrandt Technologies, LP

Administrative Claim is attached as Ex. F to Cahalan Decl.)  Rembrandt will only be entitled to

that portion of the $35 million reserve that it can prove would be reasonable damages, with the

rest of the reserve being distributed to other creditors upon resolution of the Adversary

Proceeding.

Rembrandt chose not to file its Withdrawal Motion when it filed the Adversary

Proceeding.  It also neglected to file the Withdrawal Motion when it replied to the Debtor

Defendants' counterclaim or even after the reserve in Rembrandt's name had been established.

Rembrandt waited more than a month after the reserve amount had been agreed upon, just days

after the bankruptcy court confirmed the plan of reorganization which included the Rembrandt

reserve, to file its Withdrawal Motion.

<u>ARGUMENT</u>

28 U.S.C. § 157(d) provides:

> The district court shall, on timely motion of a party,
> so withdraw a proceeding if the court determines
> that resolution of the proceeding requires
> consideration of both title 11 and other laws of the
> United States regulating organizations or activities
> affecting interstate commerce.

The statute is not "jurisdictional."  Instead, bankruptcy courts can hear cases that would

otherwise be entitled to "mandatory withdrawal" if a party invokes the jurisdiction of the

bankruptcy court or if the party is not timely in invoking the potential right to withdraw. Here, both circumstances apply. Rembrandt invoked the jurisdiction of the bankruptcy court by filing the Adversary Proceeding there, and then delayed filing its motion to withdraw while it litigated the issues leading to its reserve. Until the present motion, Rembrandt made clear that it was willing to proceed in bankruptcy court on all of the "substantive" patent issues that it now contends must be handled by the District Court.

      A.      Rembrandt's Tactic in Invoking the Bankruptcy Court's Jurisdiction and then Belatedly Seeking Withdrawal Warrants Denial of the Motion.

Rembrandt's Withdrawal Motion should be denied because it does not satisfy the threshold requirement of timeliness under Section 157(d). See Connolly v. Biderman Indus. U.S.A., Inc., No. 95 Civ. 1791 (RPP), 1996 WL 325575, at *6 (S.D.N.Y. June 13, 1996). Courts in the Second Circuit have held that the motion to withdraw must be filed as soon as practicable after it has become clear that other laws of the United States as described in Section 157(d) are implicated. See id. at *3; see also Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp. (In re FMI Forwarding Co., Inc.), No. 00 B 41815 (CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) ("[C]ourts in this Circuit have defined 'timely' to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'") (quoting Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.), No. 95 Civ. 2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995)). As one court succinctly stated: "Once a case becomes subject to withdrawal, a 'party has a plain duty to act diligently – or else, to forever hold his peace.'" United States v. Kaplan, 146 B.R. 500, 503 (D. Mass. 1992) (quoting In re Giorgio, 50 B.R. 327, 329 (D. R.I. 1985)).

    1.      As Rembrandt Initiated Proceedings On The Patent Issues in Bankruptcy
Court, Any Withdrawal Motion Should Have Been Filed Immediately.

Rembrandt bears the burden of demonstrating that its Withdrawal Motion is

timely. See, e.g., Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.), No. 01 Civ. 0165

(WHP), 2002 WL 243779, at *4 (S.D.N.Y. Feb. 20, 2002); Kaplan, 146 B.R. at 503 ("[T]he

movant carries the burden to show that both elements of § 157(d) have been met."). Ordinarily,

a party that has initiated proceedings in bankruptcy court does not thereafter change its mind and

seek withdrawal. In such unusual circumstances, there is a heavy burden on immediate

withdrawal of the reference to prevent forum shopping and prejudice.

        The court in Davis v. Mahlmann (In re Mahlmann), 149 B.R. 866 (N.D. Ill. 1993),

similarly dealt with a situation where the party moving to withdraw the reference had initiated

the action in bankruptcy court. The court correctly noted that in most cases which have

considered the timeliness issue, the party moving to withdraw the reference was responding to

pleadings which may have raised the other federal laws on which to move to withdraw the

reference. Id. at 869. In Davis, as in the case at hand, the plaintiffs were the moving party and

their own pleadings raised the federal issues which the plaintiffs later claimed merited

withdrawal of the reference. Id. The court in Davis found that a delay of less than one month

from the filing of the complaint to the motion to withdraw the reference rendered the motion

untimely under such circumstances where the plaintiffs themselves raised the federal issues.

Consequently, the court denied the motion as untimely. Id. at 870; see In re Loral Space &

Commc'ns, No. 04 Civ. 04547, 2004 WL 1586466, at *1 (S.D.N.Y. July 14, 2004) (citing Davis

with approval); Rickel & Assocs., Inc. v. Smith, No. 03 Civ. 7236, 2003 WL 23021972, at *2

(S.D.N.Y. Dec. 24, 2003) (same); Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist., 158

B.R. 574, 577 (S.D.N.Y. 1993) (same).

It is indisputable that Rembrandt's own allegations of patent infringement -- which are the entire basis for the Withdrawal Motion -- were apparent at the time that Rembrandt filed its Complaint in the Adversary Proceeding on September 13, 2006. The Complaint itself is entitled "Complaint for Post-Petition Patent Infringement." Moreover, the Complaint specifically alleges that "[t]his is an action for patent infringement arising under the laws of the United States relating to patents." (Compl. ¶ 14.) Rembrandt willingly chose to file both the Adversary Proceeding and its proof of claim in the bankruptcy court alleging patent infringement. Therefore, Rembrandt cannot argue that it was not aware of the allegations of patent infringement in connection with the Adversary Proceeding which it now claims are sufficient to justify mandatory withdrawal as of September 13, 2006. Rembrandt was required to move to withdraw the reference, if at all, in September 2006. Having failed to act diligently, Rembrandt must now proceed in the bankruptcy court where it chose to file its case. See, e.g., Davis, 149 B.R. 866; see also Laine v. Gross, 128 B.R. 588, 588-89 (D. Me. 1991) ("When the complaint contains the allegations of 'other law' which are the grounds for the motion to withdraw the reference, making existence of the issue clear, the filing of the complaint is the point from which the timeliness of the motion should be assessed."); Kaplan, 146 B.R. at 503 ("Timeliness is assessed from the time a complaint is filed or from the time the grounds for withdrawing the complaint first become apparent.").

2.    Rembrandt's Four-Month Delay In Filing The Withdrawal Motion
       Renders The Withdrawal Motion Untimely Under Section 157(d).

Rembrandt offers virtually no legal support for its contention that the Withdrawal Motion is timely despite its four-month delay, other than its argument that neither section 157(d) or the case law prescribes a specific time limit. (See Mem. of Law in Support of Rembrandt Technologies, LP's Mot. to Withdraw the Ref. 8.) That argument is beside the point, since it

- 12 -

ignores that the alleged rationale for withdrawal existed the very day Rembrandt began the

proceeding. Rembrandt's justification for the delay -- that it needed to ensure that it would get a

reserve for its claim -- establishes precisely why withdrawal now would be inappropriate:

Having chosen to litigate its claim in bankruptcy court for a substantial period in order to procure

a specific benefit (the reserve), Rembrandt waived its right to seek withdrawal. See, e.g., In re

Cambridge Biotech Corp., 186 F.3d 1356, 1371 (Fed. Cir. 1999) (holding that upon filing by

defendant of what amounted to proof of claim in bankruptcy case, bankruptcy court obtained

jurisdiction to determine validity and infringement of patents); see also In re FMI Forwarding

Co., 2005 WL 147298, at *6 ("Delay for tactical reasons, such as forum shopping, or which

prejudices the opposing party or the administration of justice, can be grounds for denying a

withdrawal motion as untimely.") (citations omitted).

Even in cases where the moving party was merely responding to a complaint filed

in bankruptcy court, courts have still found that a delay shorter than Rembrandt's warranted

denying the motion to withdraw as untimely. For example, in Lone Star Industries, Inc. v.

Rankin County Economic Development District, 158 B.R. 574 (S.D.N.Y. 1993), the court found

that a motion to withdraw the reference filed approximately three months after the complaint was

filed and two months after the moving party answered the complaint was untimely. The court

held that "to permit an application to withdraw the reference and to transfer to succeed, when

first filed at such a juncture, would reward forum shopping." Id. at 577. Similarly, in In re Great

Northern Paper, Inc., 323 B.R. 7 (D. Me. 2005), the defendants moved to withdraw the reference

less than three months after the original complaint in the adversary proceeding was filed and

eleven days after the defendants filed an answer. The defendants argued that the motion was

timely because it was only eleven days after they filed their answer in which the other issues of

3585064

federal law were first raised.  Id. at 10.  The court still denied the motion because the defendants

had long known of the looming federal issue.  Id.  As such, the three-month delay from the

complaint to the filing of the motion to withdraw the reference rendered such motion untimely.

Id.

              Other courts similarly faced with motions to withdraw the reference filed months

after the movant became aware of the federal issues have also denied such motions as untimely.

See, e.g., Laine, 128 B.R. at 589 (denying defendants' motion to withdraw the reference, filed

six months after the complaint, as untimely where the basis for defendants' motion to withdraw

the reference -- the RICO statutes -- should have been apparent to the defendants at the time of

filing of the complaint); In re Stavriotis, 111 B.R. 154, 157-58 (N.D. Ill. 1990) (denying the

motion to withdraw the reference as untimely and stating, "It is clear from the briefs that the

motion to withdraw the reference was not made as soon as possible after [defendant] learned that

federal laws might be implicated in the action before the bankruptcy court (late 1988) but rather

when it learned that it might have something to gain from withdrawal (May 1989).  That the

motion was filed as soon as [defendant] realized withdrawal might be to its advantage is not

sufficient to make the motion for withdrawal of the reference 'timely.'"); In re Sec. Group, 89

B.R. 192, 194 (M.D. Fla. 1988) (finding that having failed to seek withdrawal when filing their

answer which relied on federal securities law, defendants waived the right to have the reference

withdrawn and "submitted to the jurisdiction of the bankruptcy court for resolution of the federal

nonbankruptcy law issues which are present within the adversary proceeding"); Cent. Ill. Sav. &

Loan Assoc. v. Rittenberg Co., Ltd. (In re IQ Telecomm., Inc.), 70 B.R. 742, 746 (N.D. Ill. 1987)

(denying defendants' motion to withdraw the reference as untimely as the RICO claim was

included in the original complaint, so the defendants were on notice at that point that the grounds for withdrawing the reference existed).

Accordingly, the timeliness of the motion to withdraw the reference must be evaluated from the filing of the Complaint -- September 13, 2006. By failing to move to withdraw the reference in a timely manner, Rembrandt has waived any right it may otherwise have to seek mandatory withdrawal pursuant to Section 157(d).

3.    Both Parties, as Well as the Bankruptcy Court, Have Already Devoted Considerable Time and Effort Litigating the Patent Issues in Bankruptcy Court.

Although Rembrandt makes repeated reference to the contention that "formal discovery with respect to the Adversary Proceeding has not yet commenced," Rembrandt's Withdrawal Motion ignores the fact that substantial work on this action has already occurred in the bankruptcy court before Judge Gerber. Rembrandt argued that "the time spent in Bankruptcy Court to date has been dedicated to determining an appropriate amount to reserve for Rembrandt's claims." (Mem. of Law in Supp. of Withdrawal Mot. 3.) What Rembrandt failed to bring to the Court's attention is that both Rembrandt and the Debtor Defendants served formal requests for discovery in the Adversary Proceeding and all of the discovery was focused specifically on the issues of patent infringement and patent damages in the Adversary Proceeding. See, e.g., In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 424-25 (Bankr. S.D.N.Y. 2003) (explaining in the bankruptcy context that "[a]n estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all." Further, legal arguments must be evaluated "for their correctness as a matter of governing law.") (quotations and citations omitted).

Rembrandt has already produced over 24,000 pages of materials in discovery. The Debtor Defendants produced over 13,000 pages of discovery. Both Rembrandt and the Debtor Defendants have already retained expert witnesses in this case that have submitted expert reports on infringement and damages. Rembrandt's attempt to forum-shop its way out of the court which presided over this litigation should not be countenanced. See Childs v. Gallagher, 342 B.R. 823, 828 (M.D. Ala. 2006) ("The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics.") (quoting In re Holcomb Health Care Servs., LLC, 329 B.R. 622, 645 (Bankr. M.D. Tenn. 2004)); Davis, 149 B.R. at 870 ("[E]vidence of forum shopping is a factor courts may consider in denying a motion to withdraw the reference.").

Rembrandt's behavior here transcends mere forum shopping, and approaches sandbagging. At the November 14, 2006 conference, Judge Gerber specifically asked Rembrandt's counsel whether they had a "view or position on the advantages or disadvantages of coordinating this litigation with the actions in other jurisdictions where similar or identical issues are being raised?" (Ex. C to Cahalan Declaration.) Rembrandt did not utter a word about its plan to seek withdrawal of the reference as soon as Judge Gerber had set a satisfactory reserve for Rembrandt. Only after Rembrandt secured its reserve and the plan for reorganization was confirmed did Rembrandt surface its withdrawal maneuver.

    B.    The Adversary Proceeding Does Not Require Substantial And Material Consideration Of Non-Bankruptcy Federal Law.

        1.    The Adversary Proceeding Only Requires Routine Application of Patent Law Which Does Not Entitle Rembrandt to Mandatory Withdrawal Under Section 157(d).

Even had Rembrandt's Withdrawal Motion been timely, this is not an appropriate case to invoke mandatory withdrawal. Bankruptcy courts are capable of applying patent law and

have considered and ruled on issues of patent and other intellectual property matters.  See, e.g.,

Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.), 99 B.R. 536, 541

(S.D.N.Y. 1989) (district court affirmed bankruptcy court's determination that trademarks did

not relate to debtor's accounts receivable and contract rights); Sunbeam Prods, Inc. v. Wing

Shing Prods. (BVI) Ltd. (In re AI Realty Mktg. of N.Y., Inc.), 293 B.R. 586 (Bankr. S.D.N.Y.

2003), aff'd in part and rev'd in part on other grounds, 311 B.R. 378 (S.D.N.Y. 2004), aff'd, 153

F.App'x 703 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1085 (2006) (deciding patent infringement

case, including addressing laches defense); In re Patient Educ. Media, Inc., 210 B.R. 237, 241

(Bankr. S.D.N.Y. 1997) ("Bankruptcy courts have generally treated nonexclusive copyright and

patent licenses as executory contracts and have considered their assignability under 11 U.S.C. §

365.") (citations omitted); Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp. (In

re Cambridge Biotech Corp.), 186 B.R. 9, 19-22 (Bankr. D. Mass. 1995), aff'd, 212 B.R. 10 (D.

Mass. 1997), aff'd, 186 F.3d 1356 (Fed. Cir. 1999) (deciding, after motion to withdraw the

reference was denied, patent infringement claims and the patent defenses of lack of enablement,

lack of utility, and obviousness); Grunewald v. Power Swing Partners (In re Power Swing

Partners), 9 B.R. 512 (Bankr. S.D. Cal. 1980) (deciding issues of patent infringement, breach of

license agreement, trademark infringement, and unfair competition).

Mandatory withdrawal only applies when "resolution of the proceeding requires

consideration of both title 11 and other laws of the United States regulating organizations or

activities affecting interstate commerce."  28 U.S.C. § 157(d) (West 2004).  It is well-settled that

"[m]andatory withdrawal pursuant to the second sentence of § 157(d) is narrowly applied."

Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.), 182 B.R. 379, 382

(S.D.N.Y. 1995) (citation omitted); Adelphia Commc'ns Corp. v. Rigas (In re Adelphia

3585064

Commc'ns Corp.), No. 02 Civ. 8495 (GBD), 2003 WL 21297258, at *3 (S.D.N.Y. June 4, 2003)

(quoting same); see Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg.,

Inc.), No. 01 Civ. 7964, 2003 WL 68036, at *5 (S.D.N.Y. Jan. 8, 2003) ("[C]ourts in this Circuit

have interpreted the mandatory withdrawal provision narrowly, for 'if read literally, [it] would

eviscerate much of the work of the bankruptcy courts.'" (second alteration in original)) (quoting

O'Connell v. Terranova (In re Adelphi Inst., Inc.), 112 B.R. 534, 536 (S.D.N.Y. 1990)); In re

Texaco Inc., 84 B.R. 911, 921 (S.D.N.Y. 1988) ("Section 157(d) should be construed narrowly

and not become an 'escape hatch' through which bankruptcy matters will be removed to the

district court.") (citing In re White Motor Corp., 42 B.R. 693, 704 (N.D. Ohio 1984)).

   Mandatory withdrawal is not required whenever non-bankruptcy statutes (such as

the patent statutes) will be considered in the bankruptcy court.  Rather, it is reserved only for

those cases where substantial and material consideration of non-Bankruptcy Code federal

statutes is necessary.  Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922

F.2d 984, 995 (2d Cir. 1990); see City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d

Cir. 1991) (explaining that the bankruptcy court must be required "to engage in significant

interpretation, as opposed to simple application," of federal non-bankruptcy statutes); In re

Recoton Corp., No. 04 Civ. 2466, 2004 WL 1497570, at *3 (S.D.N.Y. July 1, 2004); Bianco v.

Hoehn (In re Gaston & Snow), 173 B.R. 302, 306 (S.D.N.Y. 1994); In re Adelphi Inst., 112 B.R.

at 536 (explaining that section 157(d) does not mandate withdrawal unless the district court "can

make an affirmative determination that resolution of the claims will require substantial and

material consideration of non-code statutes") (quotations and citations omitted).

   "Significant interpretation" exists only "when complicated interpretative issues,

often of first impression, have been raised under non-Title 11 federal laws" or when the

bankruptcy court must resolve "substantial and material conflicts between non-title 11 federal laws and the Bankruptcy Code." In re Adelphi Inst., 112 B.R. at 537; see Adelphia Commc'ns., 2003 WL 21297258, at *3; Enron Power Mktg., 2003 WL 68036, at *4 ("I do not agree that federal issues are substantial, let alone substantial issues of 'first impression' that preclude resolution by a bankruptcy judge.").  "[A]ny reading of § 157(d) which limits bankruptcy court jurisdiction to questions arising solely under the [Bankruptcy] Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous [Bankruptcy] Code provisions themselves require reference to other state and federal law." In re White Motor, 42 B.R. at 703.

Rembrandt has not, and cannot, even contend that any specific issues of first impression exist under the patent statutes or that there is any conflict between the Bankruptcy Code and any patent law that would be at issue in this case.  The Adversary Proceeding should not be withdrawn simply because patent statutes will be considered by the bankruptcy court in deciding the case.  See Sunbeam Prods., 293 B.R. 586.

> 2.     The Authorities Relied on by Rembrandt Do Not Require that the Adversary Proceeding's Reference Be Withdrawn.

Plaintiff relies heavily on Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.), No. 01 Civ. 0165 (WHP), 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002).  Unlike Rembrandt, however, in Singer the movant seeking the withdrawal of the reference was the defendant because the debtor had initiated an action against it in bankruptcy court.  See id. at *1.  While the defendant movant had previously filed a patent infringement suit in another district, that suit named only a nondebtor and had not asserted a claim against the debtors' estate.  See id. Furthermore, the "primary issue" in Singer was whether the transfer of a machine to another company "led to an implied patent license."  Id. at *3; see id. at *1 ("The central controversy . . .

- 19 -

is whether [a] plaintiff . . . owns an implied license in [the patent], . . . and if so, whether that implied license is subject to a bankruptcy reorganization plan.") (citation omitted). The plaintiffs' "claim to an implied patent raise[d] the difficult patent law question of determining under what circumstances an implied patent license can arise." Id. at *3. The Court then found that this issue "will require patent law interpretation, as little statutory and decisional law addresses [these] circumstances." Id. In contrast, Rembrandt's claim, and in fact none of the pleadings in this case, make any reference to a single licensing issue, implied or otherwise. The claim requires only a straightforward application of patent law, an exercise the bankruptcy court is capable of and authorized to perform. See Shugrue, 922 F.2d at 995; In re Adelphi Inst., 112 B.R. at 537; In re Lady Madonna Indus., 99 B.R at 541.

Finally, unlike the license issue in Singer, there is a wealth of "statutory and decisional law" to assist the bankruptcy court in its straightforward application of established patent law. See, e.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997) (stating the essential inquiry for determination of patent infringement); Markman v. Westview Instr., Inc., 517 U.S. 370 (1996); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1196 (Fed. Cir. 1994) (explaining two-step inquiry to be used in determining whether a patent claim is infringed); Caterpillar Tractor Co. v. Berco, S.P.A., 714 F.2d 1110, 1114 (Fed. Cir. 1983) ("Determination of patent infringement requires two steps: the meaning of the claims must be learned from a study of all relevant patent documents; and the claims must be applied to the accused structures.").

Rembrandt also relies on McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502 (S.D.N.Y. 1993). McCrory is materially different, and actually

demonstrates how Rembrandt fails to carry its burden.  First, the movants in <u>McCrory</u> made a

specific showing that issues to be addressed included "whether such marks are properly

registerable trademarks under Section 2(e)(1) of the Lanham Act . . . or whether Defendant's

conduct constitutes unfair competition prohibited by . . . the Lanham Act."  <u>Id.</u> at 504 (citation

omitted).  Second, the movants met their burden by specifically and substantially identifying the

complex legal issues to be addressed in the case, including those concerning the nuances of

"secondary meaning."  <u>Id.</u> at 505.  Rembrandt, however, fails to proffer similar information and

analysis.  It offers nothing other than the undeveloped and unsupported contention that the

technology used by the Debtor Defendant's "high speed cable internet system infringed"

Rembrandt's patents.  Furthermore, unlike the movants in <u>McCrory</u>, Rembrandt then offers

nothing but a conclusory statement that its case requires the requisite significant and material

consideration of patent law.  By not substantively addressing these key issues, Rembrandt's

reliance on <u>McCrory</u> is misplaced.

> 3.  Rembrandt Fails to Provide Any Analysis to Satisfy its Burden to
> Demonstrate that Substantial and Material Consideration of Patent Law is
> <u>Necessary to Resolve the Adversary Proceeding.</u>

Rembrandt fails to provide any supporting analysis which would demonstrate that

the claims in the Adversary Proceeding will require anything more than the straightforward

application or routine interpretation of patent law.  <u>See</u> <u>In re Vicars Ins. Agency, Inc.</u>, 96 F.3d

949, 953 (7th Cir. 1996) ("[T]he specifics of the particular context or posture should be fleshed

out by the moving party to demonstrate that the grounds for withdrawal are satisfied (i.e.,

substantial and material consideration is required).  That party ultimately bears the risk of

nonpersuasion.") (citing <u>Carr v. Mich. Real Estate Ins. Trust (In re Mich. Real Estate Ins. Trust)</u>,

87 B.R. 447, 459 (E.D. Mich. 1988)).  Rembrandt merely describes very generally the four

patents at issue and alleges that the Debtor Defendants infringed these patents.  There is no

contention that these particular patents, and any subsequent patent infringement analyses, will be unusually difficult to discern or that the bankruptcy court will be required to substantially interpret the patent laws in an uncommon fashion.  See Adelphia Commc'ns, 2003 WL 21297258, at *3 ("Mandatory withdrawal is a fact specific inquiry, looking to the circumstances involved in each case."); In re Adelphi Inst., 112 B.R. at 537 ("[I]t is not enough for defendants to show that the adversary proceeding involve[d] RICO, [or] that RICO is . . . even [a] complex statute.").

The procedures in a patent case are well-established, and Judge Gerber has demonstrated an awareness and recognition of those procedures.  In hearings before Judge Gerber, he has demonstrated an understanding of the patent laws at issue, as well as the patents-in-suit and the allegedly infringing acts committed by the Debtor Defendants.  Indeed, Rembrandt's counsel, at a pre-trial conference before Judge Gerber in this matter, stated that Judge Gerber was experienced in this area and never alluded to the fact that it intended to later move to withdraw the reference.  (See Ex. C to Cahalan Decl. 14.)

The import of Rembrandt's argument is that all patent infringement cases, without regard to their complexity, uniqueness or merit, must inherently require significant interpretation of non-bankruptcy law.  With no supporting facts addressing the specifics of this case, Rembrandt's argument cannot stand.  Cf. United States v. Johns-Manville Corp. (In re Johns-Manville Corp.), 63 B.R. 600, 602 (S.D.N.Y. 1986) ("It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts.").  Permitting withdrawal based on the reasoning set forth in Rembrandt's Withdrawal Motion would effectively be deciding that bankruptcy courts are never capable of

handling cases involving patent laws, and mandatory withdrawal would always apply in such

cases.  Instead, the reference to cases involving patent statutes, similar to those involving the

federal securities laws or the RICO statutes, should only be withdrawn if significant

interpretation and not straightforward application of patent statutes is required.  As no such

showing has been made by Rembrandt here, the Withdrawal Motion should be denied.

<u>**CONCLUSION**</u>

WHEREFORE, the Debtor Defendants respectfully request that the Motion to

Withdraw the Reference be denied.

Date: March 2, 2007

/s/ Roger Netzer
Roger Netzer (RN-7190)
Thomas Meloro (TM-7668)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000

*Attorneys for Defendants and Reorganized
Debtors
Adelphia Communications Corporation;
Century-TCI California, LP;
Century-TCI California Communications, LP;
Century-TCI Distribution Company, LLC;
Century-TCI Holdings, LLC;
Parnassos, LP;
Parnassos Communications, LP;
Parnassos Distribution Company I, LLC;
Parnassos Distribution Company II, LLC;
Parnassos Holdings, LLC; and
Western NY Cablevision, LP*

## CERTIFICATE OF SERVICE

I, Mark A. Ryan, declare that on March 2, 2007, I caused to be served true and correct copies of the following:

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE TO BANKRUPTCY COURT**

upon the following persons in the manner described below:

**By Federal Express (Next Business Day):**

James L. Garrity, Jr., Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

*Attorneys for Plaintiff*

**By Federal Express (Next Business Day):**

Vineet Bhatia, Esq.
Susman Godfrey LLP
590 Madison Avenue
8th Floor
New York, NY 10022

*Attorneys for Plaintiff*

Executed this 2nd day of March, 2007, at New York, New York.

_____
Mark A. Ryan