Vineet Bhatia (VB 9964)
SUSMAN GODFREY L.L.P.
590 Madison Ave., 8th Floor
New York, NY 10022
Main Telephone: (212) 336-8330

James L. Garrity, Jr. (JG 8389)
Marc B. Hankin (MH 7001)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rembrandt Technologies, LP )<br>)<br>*Plaintiff/Counter-defendants* )<br>)<br>v. )<br>)<br>Adelphia Communications Corporation; )<br>Century-TCI California, LP; )<br>Century-TCI California Communications, LP; )<br>Century-TCI Distribution Company, LLC; )<br>Century-TCI Holdings, LLC; )<br>Parnassos, LP; )<br>Parnassos Communications, LP; )<br>Parnassos Distribution Company I, LLC; )<br>Parnassos Distribution Company II, LLC; )<br>Parnassos Holdings, LLC; )<br>Western NY Cablevision, LP )<br>)<br>*Defendants/Counterclaimants* ) | 07 Civ. 00214 (WHP) |

**REMBRANDT TECHNOLOGIES, LP'S REPLY MEMORANDUM IN SUPPORT OF**
<u>**MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT**</u>

I.  **Withdrawal of the Reference is Mandatory Because Rembrandt's Claims Require Substantial and Material Consideration of Patent Law**

The black letter law governing motions to withdraw the reference is clear: "To determine whether withdrawal is mandatory, a court must consider whether the case calls for substantial and material consideration of non-Bankruptcy code federal statutes and whether such consideration is necessary for the resolution of the proceeding." *Singer Co. B.V. v. Groz-Beckert KG* (*In re The Singer Co., N.V.*), 2002 WL 243779, at *3 (S.D.N.Y. February 20, 2002) (quotation omitted); *see also Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990). There is no dispute that consideration of patent law is necessary for resolution of Rembrandt's[1] claims; thus, the only issue is whether such consideration of patent law will be substantial and material. Pursuant to this Court's reasoning in *Singer*, there is no question that the consideration of patent law will be substantial and material.

Like the patent holder in *Singer*, Rembrandt "contends that withdrawal in the instant action is mandatory on the ground that resolution of the adversary proceeding requires significant interpretation and application of federal patent . . . law[]." *Singer*, 2002 WL 243779, at *2. In *Singer*, after concluding that it must determine whether the patent was infringed, this Court stated:

> Unquestionably, determining whether an accused product infringes a patent requires significant and material consideration of patent law. This determination requires a two-step analysis in which the court must construe the disputed patent claims and then apply the construed claims to the accused device. The claim construction itself requires a hearing, followed by the court's examination of the intrinsic evidence (the words of the patent itself), the prosecution history, if in evidence, and in some instances extrinsic evidence.

---

[1] Unless otherwise defined herein, all capitalized terms not defined herein have the meanings ascribed to such terms in the Memorandum of Law in Support of Rembrandt Technologies, LP's Motion to Withdraw the Reference to the Bankruptcy Court, dated January 10, 2007.

*Id.* at *3 (citation omitted). It is indisputable that Rembrandt's claims will require the identical process: the Court must determine whether Adelphia's products and services infringed Rembrandt's patents, which will require a two-step analysis in which the Court must construe the disputed patent claims and then apply the construed claims to Adelphia's products and services. The claim construction process will require a hearing, and the Court's examination of intrinsic evidence, the prosecution history of the patents, and, possibly, extrinsic evidence.

Like Adelphia, the party opposing withdrawal of the reference in *Singer* argued "that withdrawal is not mandatory because resolution of the adversarial proceeding involves the 'routine application' of non-complex federal case law." *Id.* at *2. Just as this Court rejected that argument in *Singer*, it should do so here. Although Adelphia's Opposition[2] cites a number of cases for various propositions, one case citation is noticeably absent – Adelphia does not cite a single case from anywhere in the United States that holds, or even states in *dicta*, that patent cases involving claim construction and infringement analysis are not subject to mandatory withdrawal of the reference.

Lacking such support from the case law, Adelphia cobbles together case cites that are inapposite. For example, Adelphia cites to *Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.)*, 186 B.R. 9, 19-22 (Bankr. D. Mass. 1995) in a manner that suggests the court denied the motion to withdraw the reference because patent claims do not require substantial and material consideration of non-bankruptcy law. Opposition at 17. However, *Cambridge* includes no such analysis; its only discussion of a motion to withdraw the reference appears in the facts section of the opinion: "The parties have engaged in

---

[2] Defendants' Memorandum in Opposition to Plaintiff's Motion to Withdraw the Reference to Bankruptcy Court, dated March 2, 2007 (the "Opposition").

some preliminary skirmishing.  Immediately after filing their complaint, the plaintiffs requested the district court to withdraw the reference of this adversary proceeding.  That was denied." *Cambridge*, 186 B.R. at 12.  The court in no way hints as to why it denied the motion in a previous order.

Finally, Adelphia, apparently intending to demonstrate that mandatory withdrawal is inappropriate for patent cases, cites to a string of cases where bankruptcy courts resolved patent-related issues.  Opposition at 16-17.  Adelphia fails to note, however, that none of these opinions involved motions to withdraw the reference.  *See*, *e.g.*, *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd. (In re AI Realty Mktg. of New York, Inc.)*, 293 B.R. 586 (Bankr. S.D.N.Y. 2003), *aff'd in part and rev'd in part on other grounds*, 311 B.R. 378 (S.D.N.Y. 2004) (resolving a number of issues in a post-trial memorandum decision, but does not discuss or even mention withdrawal of the reference).  Pursuant to 28 U.S.C. § 157(d), the issue of whether mandatory withdrawal is appropriate does not arise until a party makes a timely motion for such consideration.  Thus, without a timely motion by one of the parties, the district court has no occasion to consider whether mandatory withdrawal is appropriate.

Inconvenienced by the fact that the only on-point case – *Singer* – is both contrary to its position and comes from this Court, Adelphia endeavors to marginalize *Singer*'s analysis.  Adelphia first attempts to make a distinction based upon which party filed the motion, declaring that "[u]nlike Rembrandt, however, in *Singer* the movant seeking the withdrawal of the reference was the defendant because the debtor had initiated an action against it in bankruptcy court."  Opposition at 19.  But *Singer*'s analysis does not rely upon, or even mention, such a distinction in addressing the merits.  Indeed, it is difficult to imagine how the movant's identity could affect whether consideration of patent law will be substantial and material.

Adelphia continues by arguing that here, unlike *Singer*, Rembrandt's "claim requires only a straightforward application of patent law." Opposition at 20. However, nothing could be further from the truth. In addition to the claim construction and infringement analysis relied upon by this Court in *Singer* in holding that withdrawal was required, Rembrandt's claims involve issues of whether these four patents-in-suit relate to industry-wide cable modem standards, the Defendants' implementation of those standards, whether the patents-in-suit include claims that read on cable modem hardware, cable modem software, and the processes by which information is transferred across high speed cable internet systems. Moreover, Adelphia itself has asserted a host of defenses that will require application of evolving patent law, such as invalidity.[3] Adelphia also relies heavily on patent laches for a defense. *See* Answer at 7. By law, laches may only arise after the patentee knew or reasonably should have known of an infringement. *See Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998). Thus, the question of whether a clock starts running for laches purposes depends on when Adelphia's infringement began. That question can only be answered after first discerning what exactly constitutes infringement, a determination that cannot be made until after the claims are construed. As indicated above, the question of infringement "requires significant and material consideration of patent law." *Singer*, 2002 WL 243779, at *3. As in *Singer*, "withdrawal is mandatory because resolution of the adversary proceeding requires substantial and material consideration of domestic patent law, a statutory creation." *Id.*

---

[3] The standard for invalidity of patents is currently being considered by the Supreme Court in *KSR Int'l Co. v. Teleflex, Inc.*, 119 F.App'x. 282 (Fed. Cir. Jan 06, 2005), *cert. granted*, 126 S.Ct. 2965 (U.S. June 26, 2006) (No. 04-1350) (argued and submitted on November 28, 2006). Any decision of the Supreme Court that revises the standard for obviousness is likely to cause a myriad of new case law as it is implemented by district courts.

**II.     Rembrandt Timely Moved to Withdraw the Reference**

In arguing that Rembrandt's motion to withdraw the reference was not timely, Adelphia presents a distorted description of the proceedings before the Bankruptcy Court with respect to the Rembrandt Administrative Claim and Adelphia's reorganization plan.  A fair and accurate portrayal of the relevant facts would have demonstrated that Rembrandt is not engaged in forum shopping and that its withdrawal motion is timely because it was "'made as soon as possible in light of the status of the bankruptcy proceedings.'"  *Singer*, 2002 WL 243779, at *4 (quoting *In re Texaco Inc.,* 84 B.R. 911, 919 (S.D.N.Y. 1988)).

Rembrandt was compelled to invoke the jurisdiction of the Bankruptcy Court because the Order confirming the plan of reorganization for each of the Defendants other than Adelphia fixed September 14, 2006, as the bar date for the filing of administrative claims against them.  *See* JV Debtors Confirmation Order at 39-40.[4]  Rembrandt had no choice in the matter.  It had to file an administrative claim with the Bankruptcy Court to preserve its damage claim against those Defendants.  As then drafted, Adelphia's reorganization plan did not provide for reserves out of which disputed administrative expense claims, like Rembrandt's, would be paid once allowed.  Thus, the plan violated the Bankruptcy Code's absolute priority rule, and there was a substantial risk that Adelphia would distribute all of its cash to other creditors before the Rembrandt Administrative Claim could be determined and collected.  *See* Objection of Rembrandt Technologies, LP, dated November 22, 2006 (the "Confirmation Objection"), at 6-9, attached as

---

[4] Order Confirming Third Modified Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code for the Century-TCI Debtors and Parnassos Debtors, dated June 29, 2006, entered by the United States Bankruptcy Court for the Southern District of New York (Case No. 02-41729), (the "JV Debtors Confirmation Order"), attached as Ex. A to Second Declaration of Marc B. Hankin In Support of Rembrandt Technologies, LP's Motion to Withdraw the Reference to the Bankruptcy Court, dated March 23, 2007 ("Second Hankin Decl.").

Ex. E to Cahalan Decl.[5] If that plan had been confirmed, it would have effectively rendered this adversary proceeding moot because of the substantial likelihood that the Adelphia estate would not have had sufficient funds to pay any portion of a judgment. *Id.*

After Rembrandt filed the Complaint, but before it objected to the plan, Rembrandt entered into discussions with Adelphia with respect to the claims asserted in the Complaint, including the proposed treatment of the Rembrandt Administrative Claim under Adelphia's reorganization plan. To that end, the parties addressed whether Adelphia would ask the Bankruptcy Court to estimate that claim for purposes of establishing a reserve in connection with the confirmation hearing. Prior to the November 14, 2006 pre-trial conference, the Defendants advised Rembrandt that they would *not* seek to estimate the Rembrandt Administrative Claim. The parties then engaged in very limited discovery related to preparation for Rembrandt's objection to confirmation. *See* Transcript of November 14, 2006 Pre-Trial Conference, 10:12-13, attached as Ex. C to Cahalan Decl. (Rembrandt's counsel advised the Bankruptcy Court that "[t]he parties have engaged in some informal discovery relating to the upcoming confirmation hearing.").

In their Opposition, and as the centerpiece for their assertion that Rembrandt is forum shopping, the Defendants flatly assert that "*[a]t Rembrandt's request*, Judge Gerber scheduled an estimation hearing for December 12, 2006, for the purpose of setting a reserve specifically for Rembrandt's claim." Opposition at 7 (emphasis added). The statement is simply false and is belied by the record of the November 14, 2006 pre-trial conference before Judge Gerber, during

---

[5] Declaration of Eilish M. Cahalan in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion to Withdraw the Reference to Bankruptcy Court, dated March 2, 2007 ("Cahalan Decl.").

which it was established that the Defendants, *not* Rembrandt, were seeking to estimate the claim.[6]

Prior to submitting any pleadings with respect to the estimation of the Rembrandt Administrative Claim, the parties reached an agreement that had two equally important components: (i) the Reserve Stipulation that provided for, among other things, a $35 million reserve for the Rembrandt Administrative Claim, and (ii) material modifications to the Adelphia plan of reorganization that provided sufficient assurance that, in the event the Rembrandt Administrative Claim is ultimately allowed in amount greater than $35 million, available funds will be used to satisfy such claim. Rembrandt would not have agreed to withdraw its Confirmation Objection if it had been allocated a $35 million reserve without the plan having been so amended.

Although the Defendants' Opposition makes no mention of this latter component of the parties' agreement, it was expressly noted by Defendants' counsel when the Reserve Stipulation was presented to the Bankruptcy Court on December 12, 2006:

> As a backdrop to that, Your Honor, we have had discussions with counsel for Rembrandt, clarifying for them how the plan mechanics work with respect to funds available to satisfy administrative claims. And it's on that basis, and subject to Rembrandt counsel's rights to continue to review the plan as it

---

[6] At that conference, Rembrandt's counsel initially advised Judge Gerber that, "[w]e thought there might be an estimation proceeding instituted, but we understand there won't be." Transcript of November 14, 2006 Pre-Trial Conference, 15:12-13. In its presentation following such statement, Defendants' counsel stated that such an estimation hearing would be necessary if the parties did not agree on a reserve. *See id.* at 19:14-18, 20:13-18. Rembrandt's counsel then summarized what had transpired:

> At the outset of our discussions we were thinking about and discussing in concept – and understood, nobody made a commitment, Your Honor – we're going to estimate. We were then told, no, we're not going to estimate. And now we're being told we will estimate.

*Id.* at 22:12-17. The Defendants did not disagree with this accurate description of events.

>may be modified, that Rembrandt has agreed to enter into this stipulation.

Transcript of December 12, 2006 Hearing (P.M. Session) at 8-8:16-22, attached as Ex. B to Second Hankin Decl. Accordingly, later that day the plan of reorganization was amended to, among other things, include the changes that had been agreed between the parties. *See* Notice of Filing of Draft of First Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of Its Affiliated Debtors, dated December 12, 2006, Exhibit A, § 13.2(f), attached as Exhibit C to Second Hankin Decl. Once the amended plan was confirmed by the Bankruptcy Court on Friday, January 5, 2007, and the mootness risk noted above had been addressed, Rembrandt acted timely in filing this motion to withdraw the reference the following Wednesday, January 10, 2007.

As this Court explained in *Singer*, "a motion [to withdraw the reference] is timely if it is made as soon as possible in light of the status of the bankruptcy proceedings." *Singer*, 2002 WL 243779, at *4 (quotation and citation omitted); *see also Connolly v. Bidermann Indus. U.S.A., Inc.*, 1996 WL 325575, at *3 (S.D.N.Y. June 13, 2006) ("A motion to withdraw the reference is deemed timely '. . . if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'") (citation omitted). The analysis to determine whether the timeliness requirement has been satisfied is not a matter of counting the number of days that passed between the date the complaint was filed and the withdrawal motion was made. Instead, "[d]etermining whether a motion to withdraw is timely involves a fact-specific inquiry into the context of the specific situation." *Singer*, 2002 WL 243779, at *4; *see, e.g., Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.)*, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995), (withdrawal motion timely made nine months after filing of complaint where the Bankruptcy Court decided motion to dismiss and parties engaged in several months of

mediation); *Burger King Corp. v. B-K of Kansas, Inc.* 64 B.R. 728, 730-31 (D. Kan. 1986) (withdrawal motion timely made ten months after complaint filed); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 401 (S.D.N.Y. 1986) (withdrawal motion timely made one year after complaint filed).

The opinions cited by Defendants in support of their argument that Rembrandt's motion was not timely filed do not involve the situation where the debtors' proposed a plan of reorganization failed to comply with the Bankruptcy Code's requirement that all administrative creditors be paid in full, nor the fact that such a plan, if confirmed, would have effectively rendered the underlying litigation moot. In this case, Rembrandt necessarily had to participate in the Defendants' bankruptcy cases, given the Bankruptcy Court's authority to consider the confirmability of a plan of reorganization and, in the context of the same, to estimate administrative claims. *See In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422-24 (Bankr. S.D.N.Y. 2003) (Gerber, B.J.) (bankruptcy court has the authority to estimate an administrative claim in connection with confirmation); *In re MacDonald*, 128 B.R. 161, 167-68 (Bankr. W.D. Tex. 1991) (same). Rembrandt's participation was limited to preventing Adelphia from confirming a plan of reorganization that subjected Rembrandt to the improper risk that there would have been no funds to satisfy any judgment obtained in this litigation. Once that risk had been addressed through the Reserve Stipulation and confirmation of the amended plan, Rembrandt promptly filed this motion.

Although the Defendants note that where withdrawal of the reference would prejudice a party, and that prejudice can be grounds for finding the motion untimely, the Defendants fail to even argue that they would be prejudiced by withdrawal. Opposition at 13. This is not surprising because the parties only engaged in very limited discovery over a short period of time

in preparation for the confirmation and estimation hearings.  Not only did the Bankruptcy Court not conduct the estimation hearing, the parties resolved the confirmation issues prior to even filing the pleadings for the estimation hearing with the Bankruptcy Court.  Accordingly, because Rembrandt's claims – and Adelphia's defenses – implicate substantial and material consideration of patent law, and the withdrawal motion has been timely made in light of the status of the bankruptcy proceedings, the reference must be withdrawn.

Dated:  March 23, 2007

| SUSMAN GODFREY L.L.P. | SHEARMAN & STERLING LLP |
|---|---|
| By: /s/ Vineet Bhatia<br>    Vineet Bhatia (VB 9964)<br>    590 Madison Ave., 8th Floor<br>    New York, NY 10022<br>    Main Telephone: (212) 336-8330 | By: /s/ James L. Garrity, Jr.<br>    James L. Garrity, Jr. (JG 8389)<br>    Marc B. Hankin (MH 7001)<br>    599 Lexington Avenue<br>    New York, NY  10022<br>    Main Telephone:  (212) 848-4000<br>    Main Fax:  (212) 848-7179 |
| *Attorneys for Plaintiff /Counter-defendant Rembrandt Technologies, LP* | *Attorneys for Plaintiff /Counter-defendant Rembrandt Technologies, LP* |

## CERTFICATE OF SERVICE

      I, Yuichi Haraguchi, do hereby certify that on March 23, 2007, a true and correct copy of (i) Rembrandt Technologies, LP's Reply Memorandum in Support of Motion to Withdraw the Reference to the Bankruptcy Court (the "Motion") and (ii) Second Declaration of Marc B. Hankin in Support of the Motion, each dated March 23, 2007, was served by electronic mail and first class mail on:

Roger Netzer
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019-6099

Attorneys for Defendants/Counterclaimants
Adelphia Communications Corp. et al.

                                              /s/ Yuichi Haraguchi
                                              Yuichi Haraguchi

Dated: March 23, 2007

                                              SHEARMAN & STERLING LLP
                                              599 Lexington Avenue
                                              New York, New York 10022
                                              Telephone: (212) 848-4000
                                              Facsimile: (212) 848-7179

                                              *Co-counsel to Plaintiff / Counter-defendant*
                                              *Rembrandt Technologies, LP*

NYDOCS03/829512.10